UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) GARY CEDERQUIST,<br>(2) CALVIN BUTNER,<br>(3) PERRY MENDES,<br>(4) JOEL ROGERS,<br>(5) SCOTT CAMARA, and<br>(6) ERIC MATHISON,<br><br>Defendants | Criminal No.   24cr10024<br><br>Violations:<br><br>**Counts One - Three**: Conspiracy to Falsify Records (18 U.S.C. § 371)<br><br>**Counts Four - Six**: Conspiracy to Commit Extortion (18 U.S.C. § 1951)<br><br>**Counts Seven - Nine**: Extortion (18 U.S.C. § 1951)<br><br>**Counts Ten - Fifteen**: Honest Services Mail Fraud (18 U.S.C. §§ 1341, 1346)<br><br>**Counts Sixteen - Forty-Three**: Falsification of Records (18 U.S.C. § 1519)<br><br>**Counts Forty-Four - Forty-Six**: Falsification of Records; Aiding and Abetting (18 U.S.C. § 1519; 18 U.S.C. § 2)<br><br>**Counts Forty-Seven - Seventy**: False Statements (18 U.S.C. § 1001(a)(2))<br><br>**Counts Seventy-One - Seventy-Three**: False Statements; Aiding and Abetting (18 U.S.C. § 1001(a)(2); 18 U.S.C. § 2)<br><br>**Count Seventy-Four**: Perjury (18 U.S.C. § 1623)<br><br>**Forfeiture Allegation**: (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1.     Defendant Gary CEDERQUIST was a resident of Stoughton, Massachusetts.

2.     Defendant Calvin BUTNER was a resident of Halifax, Massachusetts.

3.     Defendant Perry MENDES was a resident of Wareham, Massachusetts.

4.     Defendant Joel ROGERS was a resident of Bridgewater, Massachusetts.

5.     Defendant Scott CAMARA was a resident of Rehoboth, Massachusetts.

6.     Defendant Eric MATHISON was a resident of Boston, Massachusetts.

7.     The Massachusetts State Police ("MSP") was an agency of the Commonwealth of Massachusetts. MSP was responsible for law enforcement and vehicle regulation across the Commonwealth.

8.     CEDERQUIST, BUTNER, MENDES, ROGERS, and a person identified herein as the "Trooper Conspirator" were employed by MSP. CEDERQUIST was a Sergeant. BUTNER, MENDES, ROGERS, and the Trooper Conspirator were troopers.

9.     The laws of the Commonwealth of Massachusetts, and MSP directives, rules, and orders, set forth ethical standards of conduct for MSP troopers, who were state employees. Such laws and rules prohibited MSP troopers from soliciting or accepting things of value in return for the performance of their official duties, or taking part in matters in which they had a financial interest. MSP also required all troopers to be truthful at all times and prohibited troopers from filing false statements or reports.

10.     CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator were members of MSP's Commercial Driver's Licensing unit (the "CDL Unit") during the following time periods:

     a.  CEDERQUIST, from in or about 2017 until a date no earlier than January 5, 2023.

     b.  BUTNER, from in or about 2015 until a date no earlier than January 5, 2023.

     c.  MENDES, from in or about 2014 until on or about April 12, 2022.

     d.  ROGERS, from on or about January 9, 2022, until a date no earlier than January 5, 2023.

     e.  The Trooper Conspirator from in or about 2016 until a date no earlier than January 5, 2023.

11.     CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator were trained and authorized to, and did, administer the "skills test" to applicants for Massachusetts Commercial Driver's Licenses ("CDLs") during the following time periods:

     a.  CEDERQUIST, from a date no later than April 1, 2018, until a date no earlier than January 5, 2023.

     b.  BUTNER, from a date no later than April 1, 2018, until a date no earlier than January 5, 2023.

     c.  MENDES, from a date no later than April 1, 2018, until on or about April 12, 2022.

     d.  ROGERS, from on or about February 16, 2022, until a date no earlier than January 5, 2023.

     e.  The Trooper Conspirator from a date no later than April 1, 2018, until a date

no earlier than January 5, 2023.

12.     CAMARA was a friend of CEDERQUIST. CAMARA worked for a truck-driving

school in Brockton, Massachusetts.

13.     MATHISON was a friend of CEDERQUIST. MATHISON worked for a spring

water company that had warehouses in Massachusetts (the "Water Company"). The Water

Company did business in and affecting interstate commerce.

14.     A person identified herein as the "Friend Conspirator" was a friend of

CEDERQUIST. The Friend Conspirator worked for a construction management and general

contracting firm in Nashua, New Hampshire. The Friend Conspirator also had a side business

performing construction-related work.

### Relevant Background

#### *Federal Regulations Governed CDL Testing*
#### *But MSP Troopers in the CDL Unit Administered the Skills Tests*

15.     The Federal Motor Carrier Safety Administration ("FMCSA") was part of the

United States Department of Transportation ("USDOT"). The FMCSA was charged with the

nationwide regulation of the trucking and motor carrier industry. Its mission was to prevent

commercial motor vehicle-related deaths and injuries.

16.     A driver was required to possess a CDL to operate certain heavy or large vehicles,

such as tractor-trailers and school buses. FMCSA regulations set mandatory standards for CDL

licensing. These regulations were located in 49 C.F.R. Part 383.

17.     There were three classes of CDLs: A, B, and C. A driver was required to have a

Class A CDL in order to operate any combination of vehicles with a gross combination weight

rating over 26,000 pounds, provided the gross vehicle weight rating ("GVWR") of the vehicle being towed was over 10,000 pounds. A driver was required to have a Class B CDL in order to operate any single vehicle with a GVWR over 26,000 pounds, or any such vehicle towing a vehicle with a GVWR less than 10,000 pounds. A driver was required to have a Class C CDL in order to operate any single vehicle or combination of vehicles that met neither the Class A definition nor the Class B definition but was designed to transport more than 15 passengers including the driver, or was used in the transportation of hazardous materials. 49 C.F.R. § 383.91(a).

18.     Although CDL licensing standards were established by federal regulations, testing and issuance of CDLs were handled by states:

> [States] shall adopt and carry out a program for testing and ensuring the fitness of individuals to operate commercial motor vehicles consistent with the minimum standards prescribed by the Secretary of Transportation under section 31305(a) of this title. The State may issue a commercial driver's license to an individual only if the individual passes written and driving tests for the operation of a commercial motor vehicle that comply with the minimum standards.

49 U.S.C. § 31311(a)(1)-(2).

19.     Before a person could take the skills test in Massachusetts for a certain class of CDL (A, B, or C), they were required to obtain a commercial learner's permit for that class. 49 C.F.R. § 383.25. To do so, the applicant had to take and pass certain written tests administered at the Massachusetts Registry of Motor Vehicles ("RMV").

20.     Unless they were exempt under the regulations, a CDL applicant also was required to pass a USDOT medical exam before they could take the skills test. *Id.* §§ 391.41, 391.45(a)-(b).

21.     The only persons authorized to administer the CDL skills test in Massachusetts were MSP Troopers in the CDL Unit who had been trained to administer skills tests.[1]

22.     Federal regulations determined the requirements for the CDL skills test. *Id.* § 383.113. The test consisted of three segments:

    a.   Vehicle Inspection: The examiner tested the applicant's knowledge of the vehicle by asking them to identify and answer questions about various parts of the vehicle.

    b.   Basic Control Skills: The examiner tested the applicant's ability to perform certain maneuvers in their test vehicle.

    c.   Road Test: The examiner tested the applicant's ability to drive a commercial vehicle on an open roadway. The examiner sat in the passenger seat while the applicant drove the test vehicle.

23.     The skills test was offered at several locations in Massachusetts, including Stoughton. CEDERQUIST, BUTNER, MENDES, and ROGERS mostly tested out of Stoughton during their daytime shifts. The Stoughton yard had an office trailer for the troopers to use.

24.     The Massachusetts RMV was required to provide an FMCSA-approved examiner manual to all MSP troopers in the CDL Unit who were authorized to administer the skills test. The manual contained, among other things, details on how to conduct the skills test, scoring

---

[1] There was one exception: Prior to October 1, 2019, all skills tests for commercial vehicles that carried passengers (*e.g.*, school buses, motor coaches) were administered by trained employees of the Massachusetts Department of Public Utilities.

procedures, and reasons for an automatic test failure. The manual was written by the American

Association of Motor Vehicle Administrators ("AAMVA"). *Id.* § 383.131(b).[2]

25.    The manual advised examiners of the following test requirements, among others:

a.    Vehicle Inspection: An applicant for a Class A CDL was required to have at

least 67 correct answers for a vehicle with air brakes, or at least 61 for a

vehicle without air brakes, to pass this segment. An applicant for a Class B

CDL was required to have at least 43 correct answers for a vehicle with air

brakes, or at least 39 for a vehicle without air brakes.

b.    Basic Control Skills: An applicant for a Class A or Class B CDL had to

perform three maneuvers. The examiner had some discretion in choosing the

maneuvers. However, the manual stated, "the tests you choose ***must*** include

one exercise from each of the three categories listed." These were (i) straight-

line backing; (ii) left offset or right offset backing; and (iii) parallel parking or

alley docking. An applicant was permitted no more than 12 errors to pass this

segment.

---

[2] AAMVA is "a tax-exempt, nonprofit association developing model programs in motor vehicle administration, law enforcement, and highway safety." https://www.aamva.org/about/association-information. "A State must provide an FMCSA pre-approved examiner information manual that conforms to model requirements in paragraphs (b)(1)(i–xi) of this section to all . . . skills test examiners. To be pre-approved by FMCSA, the examiner information manual must be comparable to AAMVA's . . . Model CDL Examiner's Manual, which FMCSA has approved and provides to all State Driver Licensing Agencies." 49 C.F.R. § 383.131(b).

c. Road Test: An applicant for a Class A or Class B CDL was permitted no more than 30 errors to pass this segment. Part of the Road Test had to take place on a highway.

26.     If the applicant took and passed their skills test in a vehicle without air brakes, or if the vehicle had air brakes but the applicant failed the air brakes test, their CDL included an air brakes restriction. If the applicant took and passed their skills test in a vehicle with automatic transmission, their CDL included a manual transmission restriction. *Id.* § 383.95(a), (c).

### *How CDL Skills Test Were Conducted*

27.     An applicant for a skills test was required to make an appointment for a specific location, date, and time. Appointments were scheduled in 1½-hour blocks, with 30 minutes allocated to each test segment. An RMV scheduler or a member of MSP's CDL Unit assigned a specific trooper to administer the test.

28.     Appointment and test result information was kept electronically in the Commercial Skills Test Information Management System ("CSTIMS"), a system developed by AAMVA through an agreement with FMCSA. CSTIMS is "an internet-based tool that provides jurisdictions [including Massachusetts] and third-party examiners a consistent way to track the scheduling and entry of test results for commercial driving skills tests."

https://www.aamva.org/technology/systems/driver-licensing-systems/cstims.

> CSTIMS was developed as the result of the Federal Motor Carrier Safety Administration's (FMCSA) response to a U.S. Department of Transportation (USDOT) Office of the Inspector General's report in 2002 on large-scale fraud in the issuance of commercial driver's licenses (CDL) across the United States. CSTIMS was developed as a Web-based, software-as-a-service system to prevent and deter fraud perpetrated by third-party CDL examiners in the portion of the CDL licensing process involving the skills test.

*CSTIMS Final Report and Self-Sustainability Plan* (FMCSA, Mar. 2014),

https://rosap.ntl.bts.gov/view/dot/183.

29.     CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator

each had a CSTIMS account.

30.     When the applicant arrived at their appointment, they were required to bring their

driver's license, their CDL permit, their USDOT medical card if applicable, and a vehicle that

matched the class of CDL they were seeking (which was the CDL class identified on their

permit). In addition, every CDL applicant had to be accompanied by a sponsor. The sponsor was

required to hold a CDL for the class of vehicle the applicant was going to use for their skills test.

31.     The applicant also was required to bring, and complete parts of, a double-sided

CDL Road Test Application (the "Road Test Application"). The information in the application

included, among other things, the applicant's identification information and signature; the class

of CDL for which the applicant had a permit; whether the test vehicle had air brakes and/or

manual transmission; the make, year, registration number and state, and GVWR of the test

vehicle; the sponsor's information and signature; the date and location of the test; a section in

which the examiner wrote whether the applicant had passed or failed each test segment; and the

examiner's signature.

32.     An applicant was required to pass a test segment in order to move on to the next

segment that same day.

33.     An applicant had a limited amount of time to successfully complete a test

segment.

34.     As the applicant performed the skills test, the trooper administering the test scored the applicant on a double-sided CDL Skills Test Score Sheet (the "Score Sheet"). The trooper indicated on the Score Sheet whether the test vehicle had air brakes, and whether it had automatic or manual transmission. The trooper entered the Vehicle Inspection score, the Basic Control Skills score, and the Road Test score on the Score Sheet. If the test vehicle had air brakes, the trooper also indicated whether the applicant passed the air brakes test.

35.     The back of the permit contained blocks for the Vehicle Inspection test, the air brakes test, the Road Test, and different maneuvers. If an applicant passed one of these test segments or completed one of the maneuvers, the examiner stamped that block (or those blocks) and returned the permit to the applicant.

36.     MSP was responsible for retaining completed Road Test Applications and Score Sheets.

37.     The overall pass rate for the CDL skills test in Massachusetts was 48% in 2019, 44% in 2020, 41% in 2021, and 41% in 2022.

***Troopers Entered Skills-Test Results into CSTIMS,***
***Which Transmitted the Data Electronically to the RMV's Computer System.***
***If a CDL Was Authorized, It Was Mailed to the Licensee.***

38.     The trooper who administered an applicant's skills test was responsible for inputting the test results they had written on the Score Sheet into CSTIMS. CSTIMS determined whether the number scores inputted by the trooper constituted passing scores.

39.     CSTIMS automatically transmitted the test results data to RMV's computer system. If the data showed that the applicant had passed all three segments of the skills test, and if the applicant had paid all the required fees and had no outstanding tickets or other

impediments, RMV's computer system automatically authorized issuance of the applicant's CDL and notified a vendor to create and mail the CDL to the licensee.[3]

### Skills-Test Scores Were Material to the Issuance of CDLs

40.     Skills-test scores entered into CSTIMS were material to RMV's decision whether the applicant met FMCSA requirements for, and thus whether the RMV could issue, a CDL.

41.     An entry in CSTIMS representing that an applicant with passing scores took their skills test in a Class A vehicle was material to RMV's decision whether the applicant met FMCSA requirements for, and thus whether the RMV could issue, a Class A CDL.

42.     An entry in CSTIMS representing that an applicant with passing scores took their skills test in a vehicle with air brakes, and passed the air brakes test, was material to RMV's decision whether the applicant met FMCSA requirements for, and thus whether the RMV could issue, a CDL without an air brakes restriction.

43.     An entry in CSTIMS representing that an applicant with passing scores took their skills test in a vehicle with manual transmission was material to RMV's decision whether the applicant met FMCSA requirements for, and thus whether the RMV could issue, a CDL without a manual transmission restriction.

---

[3] An applicant referred to herein as "Water Co. Employee-1" had a New Hampshire driver's license – but was permitted to, and did, take their CDL skills test in Massachusetts. Unlike Massachusetts, the computer system used by New Hampshire's Division of Motor Vehicles received skills-test results from AAMVA via email. If the email indicated that the applicant had passed their skills test, and if they had paid all the required fees and had no outstanding tickets or other impediments, the New Hampshire DMV arranged for a permanent CDL to be manufactured and mailed to the licensee.

**The Conspiracy Among CEDERQUIST, BUTNER, MENDES, ROGERS,
and the Trooper Conspirator to Falsify Records in CSTIMS by Entering
<u>Passing Scores for Certain Applicants Whether or Not They Passed</u>**

*Object and Purpose of the Conspiracy*

44.     The object of the conspiracy was to falsify records with the intent to influence a matter within the jurisdiction of USDOT. The purpose of the conspiracy was for CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator to give preferential treatment to certain CDL skills-test applicants.

*Manner and Means of the Conspiracy*

45.     Among the manner and means by which CEDERQUIST, BUTNER, MENDES, ROGERS, the Trooper Conspirator, and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

   a.   CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator asking that certain applicants receive passing scores in CSTIMS whether or not they actually passed the skills test;

   b.   CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator agreeing to enter passing scores in CSTIMS for certain applicants whether or not they actually passed the skills test; and

   c.   CEDERQUIST, BUTNER, MENDES, ROGERS, and the Trooper Conspirator reporting passing scores in CSTIMS for certain applicants who failed the skills test.

*Overt Acts in Furtherance of the Conspiracy*

46.      Between in on or about May 2019 and in or about January 2023, CEDERQUIST,

BUTNER, MENDES, ROGERS, the Trooper Conspirator, and co-conspirators known and

unknown to the Grand Jury committed and caused to be committed the following overt acts,

among others, in furtherance of the conspiracy:

47.      ***Applicant-1*** (5/15/19)

   a.   On May 15, 2019, referring to Applicant-1, CEDERQUIST texted BUTNER,

        "Did the 1030 pass today?" BUTNER replied, "Yes sir he got the golden

        handshake👍." CEDERQUIST replied, "👍"

   b.   Knowing it was false, BUTNER reported in CSTIMS that Applicant-1 had

        passed a Class B skills test on May 15, 2019.

   c.   On May 16, 2019, CEDERQUIST texted CEDERQUIST's boss: "Your buddy

        passed yesterday he owes you that's an automatic Fail leaving the door open

        !!! Also did not have 3 points of contact and [they] came out forward instead

        of backwards but [they] passed thanks to you."

48.      ***Applicant-2*** (8/23/19)

   a.   On August 23, 2019, BUTNER texted CEDERQUIST, "Good morning sir

        what is the name of the person today that gets the golden treatment

        😊😊😊" CEDERQUIST replied, "[last name of Applicant-2]. 1230. 🐻

        😆 For Lt [name redacted]." BUTNER replied, "Ok. Ok np." CEDERQUIST

        replied, "🤣"

13

49.   *Applicant-3* (1/20/20)

    a.   On January 20, 2020, CEDERQUIST texted BUTNER, "I'm doing a golden

        handshake at 9 [referring to Applicant-3] what are you scheduled for."

        BUTNER replied, "9 and 1030. I can get Perry [MENDES] to help you out

        with that 1." CEDERQUIST replied, "OK we will handle it."

50.   *Applicant-4* (3/11/20)

    a.   On March 4, 2020, an MSP trooper outside the CDL Unit ("Trooper A")

        texted CEDERQUIST: "[name of Applicant-4] CDL test date in Stoughton on

        3/11 at 3:30pm. Thanks sgt. You da man!!" CEDERQUIST replied, "😂"

        Trooper A wrote back, "Seekonk Fire fighter!" CEDERQUIST replied, "👍"

    b.   On March 11, 2020, CEDERQUIST texted BUTNER, "Please take care of

        [name of Applicant-4]." Grind of a Trooper friend of mine." BUTNER

        replied, "[last name of Applicant-4]. CEDERQUIST replied, "Yes." BUTNER

        replied, "Golden." CEDERQUIST replied, "Yes." BUTNER replied, "Ok."

    c.   On March 11, 2020, at approximately 4:13 pm, BUTNER texted

        CEDERQUIST: "This guys a mess." CEDERQUIST texted back,

        "😂😂😂😂😂" BUTNER replied, "Lol. He owes u a prime rib 6inch. 4

        compounds and no watch." CEDERQUIST texted back, "🧑" BUTNER

        replied, "Lol. Np."

    d.   Minutes later, CEDERQUIST and Trooper A exchanged the following texts:

| Appx Time | From | To | Message |
|---|---|---|---|
| 4:16 pm | CEDERQUIST | Trooper A | Your buddy is a mess |
| 4:17 pm | Trooper A | CEDERQUIST | Is he really |
| 4:17 pm | CEDERQUIST | Trooper A | He owes you big time |
| 4:17 pm | Trooper A | CEDERQUIST | Wtf |
| 4:17 pm | CEDERQUIST | Trooper A | Yup |
| 4:17 pm | Trooper A | CEDERQUIST | How bad |
| 4:17 pm | CEDERQUIST | Trooper A | Yup |
| 4:17 pm | CEDERQUIST | Trooper A | Bad |
| 4:17 pm | Trooper A | CEDERQUIST | I'm sorry lol fucking fire fighters |
| 4:17 pm | CEDERQUIST | Trooper A | He will be fine though |
| 4:17 pm | CEDERQUIST | Trooper A | Yup |
| 4:17 pm | Trooper A | CEDERQUIST | Okay |
| 4:17 pm | Trooper A | CEDERQUIST | Thanks sgt |
| 4:17 pm | CEDERQUIST | Trooper A | Anything for you |
| 4:18 pm | Trooper A | CEDERQUIST | 👍👍👍 |

51.    ***Applicant-5*** (6/2/20)

    a.    On June 1 and 2, 2020, CEDERQUIST and the Trooper Conspirator

exchanged the following text messages:

| Appx Time | From | To | Message |
|---|---|---|---|
| | | **6/1/2020** | |
| 8:31 pm | Trooper Conspirator | CEDERQUIST | Sgt your first guy works for a good friend he's going to be the sponsor. The guy [first name of Applicant-5] had his license but it was down graded due to self cert stuff.please give him a golden shake 🙏 [attaching a photo of a CSTIMS screen showing Applicant-5 was scheduled to test with CEDERQUIST the next morning] |
| 8:32 pm | Trooper Conspirator | CEDERQUIST | [name redacted] is sponsor [company name redacted] is company |
| 8:32 pm | Trooper Conspirator | CEDERQUIST | Real great guy |
| 8:36 pm | CEDERQUIST | Trooper Conspirator | He has been a douche to the hearings officers and RMV staff I was going to fuck him over |
| 8:37 pm | Trooper Conspirator | CEDERQUIST | Really then fuck him |
| 8:37 pm | Trooper Conspirator | CEDERQUIST | No need for bullshit |
| 8:37 pm | CEDERQUIST | Trooper Conspirator | No for you I'll take care of him |
| 8:37 pm | CEDERQUIST | Trooper Conspirator | You know the guys testing |
| 8:38 pm | Trooper Conspirator | CEDERQUIST | Little bit but know his boss very well he will be there as sponsor |

| 8:38 pm | Trooper Conspirator | CEDERQUIST | You can bone him I don't care |
|---|---|---|---|
| 8:39 pm | Trooper Conspirator | CEDERQUIST | I need his boss to grass my front lawn 🤣 |
| 8:40 pm | Trooper Conspirator | CEDERQUIST | If he's a loser all favors are off<br>Fuck him! |
| 8:41 pm | CEDERQUIST | Trooper Conspirator | No problem |
| 8:41 pm | Trooper Conspirator | CEDERQUIST | 👍 |
| 8:50 pm | CEDERQUIST | Trooper Conspirator | I hope he has an application |
| 8:55 pm | Trooper Conspirator | CEDERQUIST | 🙅 |
| 8:55 pm | Trooper Conspirator | CEDERQUIST | Bye bitch |
| 8:55 pm | Trooper Conspirator | CEDERQUIST | No pen |
| 8:56 pm | CEDERQUIST | Trooper Conspirator | 😆 |
| **6/2/2020** | | | |
| 7:24 am | CEDERQUIST | Trooper Conspirator | No [name redacted] but I'll take care of this guy for you |
| 7:25 am | Trooper Conspirator | CEDERQUIST | He's not there what the fuck |
| 7:25 am | Trooper Conspirator | CEDERQUIST | He had an application? |
| 7:26 am | CEDERQUIST | Trooper Conspirator | Yes |
| 7:26 am | CEDERQUIST | Trooper Conspirator | This guy is a landscaper |
| 7:27 am | CEDERQUIST | Trooper Conspirator | I said to him you don't want to give me shit like you did to the people from the RMV on the phone do you ? |
| 7:27 am | CEDERQUIST | Trooper Conspirator | No sir |
| 7:27 am | CEDERQUIST | Trooper Conspirator | I didn't think so I said |
| 7:28 am | Trooper Conspirator | CEDERQUIST | Good fuck with him |
| 7:30 am | CEDERQUIST | Trooper Conspirator | Yes |
| 9:09 am | Trooper Conspirator | CEDERQUIST | Sergeant thank you very much I appreciate it |
| 9:12 am | CEDERQUIST | Trooper Conspirator | I hope your lawn comes out nice |
| 9:12 am | Trooper Conspirator | CEDERQUIST | 😆 |

52.  ***Applicant-6*** (11/23/20)

    a.  On November 23, 2020, CEDERQUIST texted BUTNER, "Just golden the

    1030 [referring to Applicant-6]." BUTNER replied, "Yup."

53.  ***Applicant-7*** (2/24/21)

    a.  While testing Applicant-7 on February 24, 2021, BUTNER texted

    CEDERQUIST, "Golden mess. 🤣🤣🤣🤣🤣🤣" CEDERQUIST replied,

    "I bet." BUTNER replied, "🤣🤣🤣" CEDERQUIST replied, "Is he all set.

He's a nice guy." BUTNER replied, "Ya he is   he'll be fine 👍."

CEDERQUIST replied, "👍" BUTNER later texted CEDERQUIST,

"Passed." CEDERQUIST replied, "👍"

54.  *Applicant-8* (3/4/21)

    a.  On February 28, 2021, BUTNER texted CEDERQUIST, "Good morning sir

did you take away that golden that I am doing for you [referring to Applicant-

8]?" CEDERQUIST replied, "Not it's Thursday. Why." CEDERQUIST

texted BUTNER, "She moved him to Tuesday at 0730 I put him back to

Thursday at 0900."

55.  *Applicant-9* (5/31/21)

    a.  While testing Applicant-9 on May 31, 2021, BUTNER texted CEDERQUIST,

"27 min lost." CEDERQUIST replied, "Yup. This is a favor for Perry

[MENDES] for [last name of MSP sergeant redacted]." BUTNER replied, "O

wow. Golden." CEDERQUIST replied, "Yup. No." BUTNER replied, "O

cool then." CEDERQUIST replied, "Can't fuck him on time we would never

hear the end of it from Perry [MENDES]."

56.  *Applicant-10* (8/12/21)

    a.  On August 12, 2021, CEDERQUIST texted BUTNER, "What's that truck out

there." BUTNER replied, "Perry [MENDES]'s golden." Referring to

Applicant-10, CEDERQUIST replied, "It's at 12:30 why are they here at 9."

BUTNER replied, "No clue."

57. ***Applicant-11*** (8/31/21)

    a. On August 30, 2021, CEDERQUIST texted BUTNER, "Golden for your 12:30 tomorrow brother-in-law of The Braintree off over who was shot and k9 killed. [name of Applicant-11]." BUTNER replied, "Copy that."

58. ***Applicant-12*** (11/15/21)

    a. On November 15, 2021, BUTNER texted CEDERQUIST, "[Applicant-12] is not a golden Rt ?" CEDERQUIST replied, "[W_____ name redacted] asked he's New Bedford police officer." BUTNER replied, "Rt help him out because he's slow and going to run out of time and [W_____ name redacted] should of asked me."

59. ***Applicant-13*** (1/3/22)

    a. On January 3, 2022, CEDERQUIST texted BUTNER, "Your 1230 [referring to Applicant-13] is a Golden." BUTNER replied, "Really." CEDERQUIST replied, Yes." BUTNER replied, Ok." CEDERQUIST wrote, "My Friend [P_____ name redacted] son town of Canton." BUTNER replied, "Ok." CEDERQUIST replied, "[P_____ name redacted] was half owner of [name of towing company]. Good guy."

    b. Applicant-13 performed only one of the three required maneuvers. BUTNER texted CEDERQUIST, "He's a mess Class A truck 2psi loss with truck running truck cut our again while timing 🤣🤣🤣🤣" 42 seconds later, BUTNER texted CEDERQUIST, "He passed." CEDERQUIST replied, "🤣" BUTNER replied, "🤣🤣🤣"

    c. On or about January 3, 2022, BUTNER falsely reported in CSTIMS that Applicant-13 had passed the Class A skills test.

60.    *Applicant-14* (2/7/22)

    a. On February 7, 2022, CEDERQUIST and BUTNER exchanged the following texts:

| Appx Time | From | To | Message |
|---|---|---|---|
| 7:37 am | CEDERQUIST | BUTNER | [name of Applicant-14] @0900 golden please |
| 7:43 am | BUTNER | CEDERQUIST | 👍 |
| 7:46 am | CEDERQUIST | BUTNER | [url of men's clothing store] |
| 7:46 am | CEDERQUIST | BUTNER | It's this guys friend or relative he takes case of the police |
| 7:46 am | CEDERQUIST | BUTNER | In case you need an ew suit or alterations |
| 7:53 am | BUTNER | CEDERQUIST | O ok cool |
| 7:53 am | BUTNER | CEDERQUIST | 🤣🤣🤣🤣🤣 |
| 7:53 am | CEDERQUIST | BUTNER | Thank you |
| 7:55 am | BUTNER | CEDERQUIST | Any time |

    b. Applicant-14 performed only two of the three required maneuvers. BUTNER texted CEDERQUIST: "Total mess this guy[.] i think some time[s] we should just do what we can but not golden. I'll tell you about it later." CEDERQUIST replied: "Ok I'm sure he's doing great." BUTNER replied, "Yes sir."

    c. On February 7, 2022, BUTNER falsely reported in CSTIMS that Applicant-14 had passed the Class A skills test.

61.    *Applicant-15* (2/17/22)

    a. On February 17, 2022, CEDERQUIST texted MENDES, "Golden for [name of Applicant-15] this afternoon." MENDES replied, "👍"

62.   *Applicant-16* (3/31/22)

   a.   On March 30, 2022, CEDERQUIST texted ROGERS, "Your 0900 tomorrow

   [referring to Applicant-16] is a golden he works for my friend who is bringing

   him and his dad is a retired Foxboro police officer." ROGERS replied, "Tell

   him to bring his a game. I don't fuck around." CEDERQUIST replied, "Good

   one." ROGERS replied, "😂" CEDERQUIST "laughed" at ROGERS's

   message.

63.   *Applicant-17* (1/5/23)

   a.   On January 5, 2023, CEDERQUIST texted ROGERS, "Please take care of

   [name redacted] today he is engaged to my buddies daughter." "[Name of

   Applicant-17] golden please!!!!!"

**The Conspiracy Between CEDERQUIST and CAMARA to Falsely Report
in CSTIMS That CEDERQUIST Had Administered the Class A Skills Test
to Four Troopers in October 2021 and That All Four Had Passed**

*Object and Purpose of the Conspiracy*

64.   The object of the conspiracy was to falsify records with the intent to influence a

matter within the jurisdiction of the United States Department of Transportation. The purpose of

the conspiracy was for CEDERQUIST and CAMARA to give preferential treatment to four

Class A CDL applicants who were MSP troopers.

20

### *Manner and Means of the Conspiracy*

65.     Among the manner and means by which CEDERQUIST, CAMARA, and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

      a.   CAMARA falsely representing on the troopers' Road Test Applications that he served as their sponsor;

      b.   CAMARA writing information on the troopers' Road Test Applications indicating that they had taken their skills tests in a cab with an attached trailer, which was required for the vehicle to qualify as a Class A vehicle, knowing that the troopers took their tests in a cab without a trailer;

      c.   CEDERQUIST falsely representing in CSTIMS that he administered the Road Test to each of the four troopers, knowing that CAMARA was the only person who rode in the cab with each trooper; and

      d.   CEDERQUIST falsely representing in CSTIMS that each trooper took and passed a Class A skills test, knowing that the troopers did not pass the Road Test and that they drove a vehicle which did not qualify as a Class A vehicle.

### *Overt Acts in Furtherance of the Conspiracy*

66.     Between on or about October 5, 2021 and on or about October 6, 2021, CEDERQUIST, CAMARA, and co-conspirators known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

a. ***Trooper A and Trooper B***

     i.    On or about October 5, 2021, CAMARA wrote his name, identification information, and signature in the "Sponsor Information" section of Trooper A's and Trooper B's Road Test Applications, knowing that he was not the sponsor for either of them.

    ii.    On or about October 5, 2021, CAMARA wrote the make, year, GVWR, and registration number and state of a trailer (the "Trailer Information") on the Road Test Applications of Trooper A and Trooper B, knowing that both troopers took their test in a cab without an attached trailer.

    iii.    On or about October 5, 2021, CEDERQUIST included the Trailer Information on the Score Sheets for Trooper A and Trooper B, knowing that neither of them drove a cab with an attached trailer.

    iv.    On or about October 5, 2021, CEDERQUIST reported in CSTIMS that he had administered the Road Test to Trooper A and Trooper B, knowing that only CAMARA rode in the test vehicle with them, and that both troopers had passed the Class A skills test, knowing that the cab they drove did not qualify as a Class A vehicle.

b. ***Trooper C and Trooper D***

     i.    On or about October 6, 2021, CAMARA wrote his name, identification information, and signature in the "Sponsor Information"

section of Trooper C's and Trooper D's Road Test Applications, knowing that he was not the sponsor for either of them.

ii.   On or about October 6, 2021, CAMARA wrote the Trailer Information on the Road Test Applications of Trooper C and Trooper D, knowing that both troopers took their test in a cab without an attached trailer.

iii.  On or about October 6, 2021, CEDERQUIST included the Trailer Information on the Score Sheets for Trooper C and Trooper D, knowing that neither of them drove a cab with an attached trailer.

iv.   On or about October 6, 2021, CEDERQUIST reported in CSTIMS that he had administered the Road Test to Trooper C and Trooper D, knowing that only CAMARA rode in the test vehicle with them, and that both troopers passed the Class A skills test, knowing that the cab they drove did not qualify as a Class A vehicle.

**The Conspiracy Between CEDERQUIST and the Trooper Conspirator to Falsely Report in CSTIMS That CEDERQUIST Had Administered the Class A CDL Skills Test to ROGERS and Four Other MSP Employees and That All Five Had Passed**

***Object and Purpose of the Conspiracy***

67.   The object of the conspiracy was to falsify records with the intent to influence a matter within the jurisdiction of the United States Department of Transportation. The purpose of the conspiracy was for CEDERQUIST and the Trooper Conspirator to give preferential treatment to ROGERS and four other MSP employees, who are identified herein as "Trooper E", "Civilian

23

MSP Employee-1," "Civilian MSP Employee-2," and "Civilian MSP-Employee-3" (together, the "Five MSP Employees"), in regard to obtaining Class A CDLs.

### Manner and Means of the Conspiracy

68.     Among the manner and means by which CEDERQUIST, the Trooper Conspirator, and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

> a.  The Trooper Conspirator and CEDERQUIST agreeing that CEDERQUIST would falsely report that he had tested the Five MSP Employees;
>
> b.  CEDERQUIST falsely reporting on the Road Test Applications and Score Sheets of the Five MSP Employees that he had given them a Class A CDL skills test and all five had passed; and
>
> c.  CEDERQUIST falsely reporting in CSTIMS that he had given the Five MSP Employees a Class A skills test and all had passed.

### Overt Acts in Furtherance of the Conspiracy

69.     Between a date no later than January 31, 2022, and on or about February 9, 2022, CEDERQUIST, the Trooper Conspirator, and co-conspirators known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

> a.  On January 31, 2022, the Trooper Conspirator, who was training the Five MSP Employees on how to take and pass the Class A CDL skills test,[4] texted

---

[4] ROGERS transferred into the CDL Unit on or about January 9, 2022. He obtained a Class A CDL on or shortly after February 8, 2022, when CEDERQUIST falsely reported that he had administered the skills test to ROGERS and that ROGERS had passed. The Trooper Conspirator

24

with CEDERQUIST about how, after the training, CEDERQUIST would stamp the Five MSP Employees' CDL permits without testing them.

b. On or about February 8, 2022, CEDERQUIST stamped the CDL permits of the Five MSP Employees without testing them.

c. On or about February 8, 2022, CEDERQUIST falsely reported on the Road Test Applications and Score Sheets of the Five MSP Employees that he had administered the Class A CDL skills test to them and they had passed.

d. On February 8, 2022, CEDERQUIST falsely reported in CSTIMS that he had administered the Class A CDL skills test to Trooper E, Civilian MSP Employee-1, Civilian MSP Employee-2, and Civilian MSP Employee-3, and all had received passing scores.

e. On February 9, 2022, CEDERQUIST falsely reported in CSTIMS that another trooper in the CDL Unit had administered the Vehicle Inspection test to ROGERS, and CEDERQUIST had administered the Basic Control Skills test and Road Test, and ROGERS had received passing scores on all segments.

---

trained ROGERS on how to administer CDL skills tests. On or about February 16, 2022, ROGERS began administering skills tests.

25

**The Conspiracy Between CEDERQUIST, BUTNER, MENDES, the Trooper Conspirator, and MATHISON for CEDERQUIST to Obtain a Stream of Benefits to Which He Was Not Entitled, from MATHISON, with Assistance from BUTNER, MENDES, and the Trooper Conspirator, in Exchange for CEDERQUIST Giving Preferential Treatment to Persons Affiliated with the Water Company**

70.     MSP had a contract with the Water Company. The Water Company sold its own brand of spring water in large jugs for water coolers and also in bottles. These were the only items that MSP purchased under its contract with the Water Company.

71.     The Water Company also sold bottles of more expensive brands of water as well as coffee, tea, and other products.

72.     The Water Company employed drivers who needed CDLs to drive Water Company trucks to make deliveries to customers.

73.     MATHISON had a Class B CDL and drove Water Company trucks. MATHISON had access to Water Company inventory.

### *Object and Purpose of the Conspiracy*

74.     The object of the conspiracy was for CEDERQUIST to use his official position as the Sergeant in charge of MSP's CDL Unit to obtain a stream of benefits not due to him, from MATHISON, with the consent of MATHISON, and with assistance from BUTNER, MENDES, and the Trooper Conspirator. The purpose of the conspiracy was for CEDERQUIST to enrich himself personally.

### *Manner and Means of the Conspiracy*

75.     Among the manner and means by which CEDERQUIST, BUTNER, MENDES, the Trooper Conspirator, MATHISON, and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

a. CEDERQUIST leveraging his position as the Sergeant in charge of MSP's CDL Unit to obtain Water Company items to which he was not entitled, from MATHISON;

b. MATHISON providing these items to CEDERQUIST without payment from CEDERQUIST;

c. CEDERQUIST storing these items in the office trailer at the Stoughton CDL test yard, where CEDERQUIST, BUTNER, MENDES, and the Trooper Conspirator could and did access them despite knowing they were not entitled to them;

d. CEDERQUIST and BUTNER giving MATHISON a key to the Stoughton test yard gate so that he could leave Water Company items in the trailer even when the yard was closed;

e. CEDERQUIST and MATHISON ensuring that applicants associated with the Water Company were tested by CEDERQUIST, BUTNER, MENDES, or the Trooper Conspirator;

f. CEDERQUIST and MENDES falsely reporting passing scores on the Score Sheets of certain applicants associated with the Water Company; and

g. CEDERQUIST falsely reporting in CSTIMS that certain applicants associated with the Water Company had received passing scores.

### *Acts in Furtherance of the Conspiracy*

76.    Between in or about October 2018 and in or about November 2021, CEDERQUIST, BUTNER, MENDES, the Trooper Conspirator, MATHISON, and co-

conspirators known and unknown to the Grand Jury committed and caused to be committed the

following overt acts, among others, in furtherance of the conspiracy:

    a.  Between October 5 and 25, 2018, MATHISON and CEDERQUIST

        exchanged the following texts, among others:

| Date | Appx Time | From | To | Message |
|---|---|---|---|---|
| 10/5/18 | 1:00 pm | MATHISON | CEDERQUIST | They wanna book a guy for the 16 or 17th of this month are you there or any of the regulars. |
| 10/5/18 | 1:00 pm | CEDERQUIST | MATHISON | Probably |
| 10/5/18 | 1:00 pm | MATHISON | CEDERQUIST | Did you see the new coffee setup i put in the trailer for you guys and cocoa tea and coffee and espresso |
| 10/5/18 | 1:00 pm | CEDERQUIST | MATHISON | No |
| 10/5/18 | 1:02 pm | MATHISON | CEDERQUIST | Nice set up with a holder and sleeves of hot cups |
| 10/5/18 | 1:02 pm | CEDERQUIST | MATHISON | I'll check tomorrow |
| 10/5/18 | 1:02 pm | MATHISON | CEDERQUIST | Alright got voss and essentia coming also will text u when leave that |
| 10/5/18 | 1:04 pm | CEDERQUIST | MATHISON | Awesome |
| 10/20/18 | 7:50 pm | MATHISON | CEDERQUIST | Hi i put stuff in there for you and perry [MENDES] your on the left hand fresh esspresso beans and also italian roast cups lids and voss and teas |
| 10/25/18 | 12:59 pm | CEDERQUIST | MATHISON | Need some water bottles when you can |
| 10/25/18 | 1:00 pm | CEDERQUIST | MATHISON | The big 5 gals or voss |
| 10/25/18 | 1:06 pm | MATHISON | CEDERQUIST | Are you in november 5 thru 9th we are taking this guy down to test |
| 10/25/18 | 1:07 pm | CEDERQUIST | MATHISON | Both |

Water Co. Employee-1

    b.  On a date between January 29 and February 1, 2019, as a new Water

        Company truck driver ("Water Co. Employee-1") was driving to their skills

        test with MATHISON in a Water Company truck, MATHISON said that (i)

        the test would be easier because he knew the trooper who would be

        administering it, and (ii) the skills test was always easier for Water Company

        people.

c. On a date between January 29 and February 1, 2019, MENDES reported on a Score Sheet that Water Co. Employee-1 passed the Basic Control Skills test and the Road Test, even though Water Co. Employee-1 performed no maneuvers, and even though MENDES rode in the test vehicle with Water Co. Employee-1 for only a few minutes and without taking them onto a highway, as required.

d. Immediately after the test, MATHISON opened the side bay of the Water Company truck and removed Water Company inventory, specifically, cases of bottled Fiji Water and VOSS Water, and helped MENDES put them in MENDES's cruiser.

e. On February 2, 2019, CEDERQUIST and MATHISON exchanged the following texts, among others:

| Appx Time | From | To | Message |
|---|---|---|---|
| 11:35 am | MATHISON | CEDERQUIST | Good morning im leaving warehouse now you good with coffee and suppluies or you need a bump up how is the lavazza need intense |
| 11:36 am | CEDERQUIST | MATHISON | Lavazaa yes, Vos and if the espresso came in for flavia |
| 11:37 am | MATHISON | CEDERQUIST | Ok let me check in warehouse one second |
| 11:41 am | MATHISON | CEDERQUIST | Must have came in yesterday |

f. On February 2, 2019, after the above text exchange, CEDERQUIST falsely reported in CSTIMS that MENDES had administered all three segments of the Class B skills test to Water Co. Employee-1, who passed.

MATHISON's Key

g. On February 16, 2019, CEDERQUIST texted MATHISON, "You have a key to the gate now right." MATHISON replied, "Yes i have the key to the gate." CEDERQUIST replied, "Excellent."

29

h.   Several hours later, MATHISON texted CEDERQUIST, "All stocked up. Not

bad. Not bad at all ha ha." He attached a photograph of numerous items in the

Stoughton trailer, including a sealed box for an AquaCafe®r K-cup

dispensing machine; two cases of Polar seltzer water in cans; a case of bottled

Fiji Water; a case of bottled VOSS Water; a case of bottled Arizona Green

Tea; boxes of coffee and tea; and boxes of Twizzlers and Swedish Fish candy:



i.   On September 6, 2019, MATHISON texted CEDERQUIST that there was a

new lock on the gate and he did not have a key. MATHISON texted

CEDERQUIST, "I have the key Cal [BUTNER] gave me months ago and it

isn't working [the lock] looks new."

j.   On September 18, 2019, MATHISON texted CEDERQUIST, "Was heading

to bridgewater[5] seeing if you all need anything on return trip. Did you get a

new key for the midnight express." CEDERQUIST replied, "Not yet but I

---

[5]  Water Company had a warehouse in Bridgewater.

Case 1:24-cr-10024-IT   Document 1   Filed 01/25/24   Page 31 of 76

need Voss and Italian toast espresso and some decaf for an old timer at the office." MATHISON replied, "Ill find out from Cal [BUTNER] about extra key he got one last time."

Two Water Company Drivers

k. On February 13, 2020, MATHISON texted CEDERQUIST, "what time Monday do you want us in." CEDERQUIST replied, "We will make it [] 3 pm start sorry. If not cal [BUTNER] or Perry [MENDES] will get it."

l. On Monday, February 17, 2020, when skills tests were scheduled for two applicants sponsored by MATHISON, CEDERQUIST and MATHISON exchanged the following texts, among others:

| Appx Time | From | To | Message |
|---|---|---|---|
| 10:47 am | CEDERQUIST | MATHISON | What time are you going to be there this afternoon |
| 11:00 am | MATHISON | CEDERQUIST | 230<br>Gotcha |
| 11:02 am | CEDERQUIST | MATHISON | What else you bringing |
| 11:04 am | MATHISON | CEDERQUIST | A lot lol want them good lol |
| 11:04 am | CEDERQUIST | MATHISON | 😂 |
| 11:05 am | MATHISON | CEDERQUIST | Lol have to get them on routes fast |
| 3:30 pm | CEDERQUIST | MATHISON | You're welcome |
| 3:30 pm | CEDERQUIST | MATHISON | I did the air brake test for fin |
| 3:30 pm | MATHISON | CEDERQUIST | Yes sir thank youuu makes me look shinning |
| 3:30 pm | CEDERQUIST | MATHISON | Him |
| 3:31 pm | CEDERQUIST | MATHISON | He had no idea |
| 3:44 pm | CEDERQUIST | MATHISON | [first name of MATHISON's boss] owes big for this one |

m. On February 17, 2020, after the above text exchange, CEDERQUIST reported in CSTIMS that he had tested both applicants, who had passed all parts of the skills test, including the air brakes test, despite knowing that one of the applicants did not pass the air brakes test.

<u>Water Co. Employee-2 and Truck Driver</u>

n.  On the morning of February 25, 2020, CEDERQUIST made appointments in

    CSTIMS to administer Class B skills tests to "Water Co. Employee-2" starting

    at 3:30 pm and then "Truck Driver" immediately thereafter.

o.  On February 25, 2020, starting at 3:29 pm, CEDERQUIST and MATHISON,

    who sponsored both applicants, exchanged the following texts, among others:

| Appx Time | From | To | Message |
|---|---|---|---|
| 3:29 pm | CEDERQUIST | MATHISON | This kids an idiot[6] |
| 3:30 pm | CEDERQUIST | MATHISON | No idea what he's doing |
| 3:30 pm | CEDERQUIST | MATHISON | [First name of MATHISON'S boss] should be sending strippers |
| 3:30 pm | CEDERQUIST | MATHISON | 🙂 |
| 3:31 pm | CEDERQUIST | MATHISON | 😡 |
| 3:31 pm | MATHISON | CEDERQUIST | I fucling love the emojis ha |
| 3:42 pm | MATHISON | CEDERQUIST | [First name of MATHISON'S manager] owes big time |
| 3:43 pm | CEDERQUIST | MATHISON | Wtf |
| 3:43 pm | MATHISON | CEDERQUIST | Oh yes he has been running routes in the truck but he told [name redacted] he is scared of you lol |
| 3:43 pm | CEDERQUIST | MATHISON | Omfg |
| 3:43 pm | MATHISON | CEDERQUIST | He is scared of police |
| 3:44 pm | CEDERQUIST | MATHISON | He is stupid |
| 3:44 pm | CEDERQUIST | MATHISON | He should have failed about 10 times already |
| 3:45 pm | MATHISON | CEDERQUIST | The old guy is [first name of MATHISON's boss]'s uncle he is good but im definately telling [first name of MATHISON's boss] |
| 3:45 pm | CEDERQUIST | MATHISON | Wtf |
| 3:46 pm | MATHISON | CEDERQUIST | More food and best buy |
| 3:46 pm | CEDERQUIST | MATHISON | What |
| 3:46 pm | MATHISON | CEDERQUIST | [first name of MATHISON's boss]s owes a new recliner or flat screen |
| 3:46 pm | CEDERQUIST | MATHISON | Or both |
| 3:47 pm | CEDERQUIST | MATHISON | 😄 |
| 3:47 pm | MATHISON | CEDERQUIST | For office yes I agree |
| 3:47 pm | CEDERQUIST | MATHISON | [emoji of face with thumbs up] |

---

[6] On February 25, 2020, Water Co. Employee-2 was approximately 23 years old and Truck
Driver was approximately 57 years old.

| 3:47 pm | CEDERQUIST | MATHISON | 👮 |
| 3:47 pm | MATHISON | CEDERQUIST | Lol |
| 4:15 pm | CEDERQUIST | MATHISON | This guys worse |
| 4:17 pm | CEDERQUIST | MATHISON | 😡 |
| 6:58 pm | CEDERQUIST | MATHISON | How did you make out shopping in Bridgewater? |
| 7:23 pm | MATHISON | CEDERQUIST | People still here also but I got you more Norway[7]  and new stuff |

p. On February 25, 2020, CEDERQUIST reported in CSTIMS that Water Co. Employee-2 had passed the skills test, which CEDERQUIST knew was false because he knew that Water Co. Employee-2 had performed only two of the three required maneuvers.

q. On February 25, 2020, CEDERQUIST reported in CSTIMS that Truck Driver had passed the skills test, which CEDERQUIST knew was false because he knew that Truck Driver had performed only one of the three required maneuvers.

MATHISON's Requests to Have Applicants Tested in Stoughton

r. Between February 15 and March 9, 2021, CEDERQUIST and MATHISON exchanged the following texts, among others:

| Date | Appx Time | From | To | Message |
|------|-----------|------|-----|---------|
| 2/15/21 | 9:24 am | MATHISON | CEDERQUIST | Good Morning [first name of MATHISON's boss] would like have his Uncles son test and of course bump the supply either a fri or sat those are my only days off |
| 2/15/21 | 9:25 am | MATHISON | CEDERQUIST | Let me know what works for you. |
| 2/15/21 | 9:34 am | CEDERQUIST | MATHISON | Ok |
| 3/4/21 | 7:58 pm | MATHISON | CEDERQUIST | Hello. [first name of MATHISON's boss] just called me he has three and he asked me about times. I said you must be busy or pissed. Lol |
| 3/4/21 | 8:01 pm | MATHISON | CEDERQUIST | He had to hire a new kid with permit |

---

[7] VOSS Water is from Norway.

33

| 3/4/21 | 8:03 pm | MATHISON | CEDERQUIST | He would like to get his uncles son in the italian guy that came down before with the meat factory |
|--------|---------|----------|------------|--------------------------------------------------|
| 3/4/21 | 8:03 pm | MATHISON | CEDERQUIST | All under [name of Water Company] |
| 3/4/21 | 8:03 pm | CEDERQUIST | MATHISON | Ok |
| 3/4/21 | 8:03 pm | MATHISON | CEDERQUIST | Hows the trailer holding |
| 3/4/21 | 8:04 pm | CEDERQUIST | MATHISON | In desperate need of restocking |
| 3/4/21 | 8:04 pm | MATHISON | CEDERQUIST | Ill let him know lol im off tomorrow and Saturday |
| 3/8/21 | 10:29 am | MATHISON | CEDERQUIST | [full name and phone number of MATHISON's boss] |
| 3/9/21 | 3:04 pm | CEDERQUIST | MATHISON | Zero calorie sweetener large white cups stirrers Voss English breakfast tea Arizona zero calorie green tea ice energy strawberry citrus mountain valley sport bottles and aluminum cans and a truckload of large water |

     s.   On November 22, 2021, MATHISON texted CEDERQUIST: "Whats going on hows the supply doing. Also have a new fancy flavia and pod machine. Ill be down this week have to give you list have 4 guys coming up. Ill email it."

**The Conspiracy Between CEDERQUIST and the Friend Conspirator for CEDERQUIST
to Obtain a Stream of Benefits to Which He Was Not Entitled,
from the Friend Conspirator, in Exchange for CEDERQUIST Helping to Obtain CDLs
for Persons With Whom the Friend Conspirator
Had Personal or Business Relationships and/or Their Family Members**

    77.    The Friend Conspirator had a business relationship with the owner ("Asphalt Co. Owner") of a small company located in Dighton, Massachusetts (the "Asphalt Company"). The Asphalt Company provided asphalt-related services, including excavating property in preparation for paving. The Asphalt Company did business in and affecting interstate commerce.

    78.    The Friend Conspirator had a business relationship with the owner ("Paving Co. Owner") of a small paving company located in Worcester, Massachusetts (the "Paving Company"). The Paving Company did business in and affecting interstate commerce.

79.    The company that employed the Friend Conspirator sold asphalt, among other items, and did business in and affecting interstate commerce.

80.    The Friend Conspirator had a business relationship with the owner (the "Hardware Store Owner") of a hardware store in Framingham, Massachusetts (the "Hardware Store"). The Hardware Store sold snowblowers, among other items, and did business in and affecting interstate commerce.

81.    "Applicant-18" was an employee of the Asphalt Company and the adult child of Asphalt Co. Owner.

82.    "Applicant-19" was a CDL applicant and the adult child of the Hardware Store Owner.

83.    The brother of the Friend Conspirator was a manager at a company that sold and installed plunge pools.

### *Object and Purpose of the Conspiracy*

84.    The object of the conspiracy was for CEDERQUIST to use his official position as a Sergeant with the MSP to obtain a stream of benefits not due to him, from the Friend Conspirator, with the consent of the Friend Conspirator. The purpose of the conspiracy was for CEDERQUIST to enrich himself personally.

### *Manner and Means of the Conspiracy*

85.    Among the manner and means by which CEDERQUIST, the Friend Conspirator, and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

a.   CEDERQUIST leveraging his position as a Sergeant with the MSP to ask the Friend Conspirator for a stream of benefits not due to him, including but not limited to landscaping work, the renovation of his driveway, a snowblower, a storage shed, and a plunge pool;

b.   CEDERQUIST "cutting the line" to obtain earlier-than normal CDL permit and skills-test appointments for people with whom the Friend Conspirator had personal or business relationships and their family members;

c.   The Friend Conspirator obtaining free or discounted items and services from people with whom the Friend Conspirator had personal or business relationships;

d.   The Friend Conspirator providing these items and services to CEDERQUIST without payment from CEDERQUIST; and

e.   CEDERQUIST helping the persons who provided some of these items and services and/or their family members obtain CDLs.

### *Acts in Furtherance of the Conspiracy*

86.   Between in or about March 2021 and in or about February 2022, CEDERQUIST, the Friend Conspirator, and co-conspirators known and unknown to the Grand Jury committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

<u>Landscaping Work</u>

a.   CEDERQUIST told the Friend Conspirator he wanted landscaping work done at his house.

b. On March 17 and 18, 2021, CEDERQUIST texted the Friend Conspirator, "My wife is psyched that you're going to rip out this shrubs and possible fix the lawn." "Pinks purple and lilacs she likes."

<u>The Driveway</u>

c. CEDERQUIST told the Friend Conspirator that he wanted the driveway at his house, which was in Stoughton, redone.

d. On or before May 18, 2021, the Friend Conspirator told the Asphalt Co. Owner that if the Asphalt Company would excavate CEDERQUIST's driveway for free, the Friend Conspirator would arrange for free paving of a Stoughton property the Asphalt Company had excavated for a job, and, in addition, CEDERQUIST would help the Asphalt Co. Owner and Applicant-18 get their CDLs.

e. CEDERQUIST did not pay for the excavation of his driveway, which was performed by the Asphalt Company on or about May 18, 2021.

f. On or about May 19, 2021, after learning that the Asphalt Company had a large enough dump truck to deliver sufficient asphalt to pave CEDERQUIST's driveway, but that the truck required a CDL and the only Asphalt Company employee with a CDL was unavailable, CEDERQUIST asked the Friend Conspirator to tell Applicant-18 to drive the truck, saying he (CEDERQUIST) would "take care of" the license situation.

g.  On the morning of May 20, 2021, CEDERQUIST scheduled an appointment in CSTIMS to administer a CDL skills test to Applicant-18 that afternoon, knowing that no such test would occur.

h.  On the evening of May 20, 2021, CEDERQUIST falsely reported in CSTIMS that he had administered a skills test to Applicant-18, who had passed.

i.  On or about May 20, 2021, CEDERQUIST fabricated a Score Sheet on which he wrote that Applicant-18 had taken and passed a skills test.

j.  On or about May 21, 2021, CEDERQUIST's false entries in CSTIMS caused the RMV to issue a CDL to Applicant-18, despite Applicant-18 not having met federal requirements for a CDL.

k.  On or about May 22, 2021, Applicant-18 drove a CDL vehicle to the company that employed the Friend Conspirator, picked up asphalt, and drove it to CEDERQUIST's house. CEDERQUIST did not pay for the asphalt or the trucking service.

l.  CEDERQUIST did not pay for the paving of his driveway, which the Paving Co. Owner performed on or about May 22, 2021.

m.  CEDERQUIST did not pay anything for his new driveway, which, with labor and materials, had a value of approximately $10,000.

n.  Photos of CEDERQUIST's driveway shortly after excavation began, and after paving was complete, are below:

 

<u>The Snowblower</u>

o.  In or about January 2022, CEDERQUIST told the Friend Conspirator he wanted a snowblower.

p.  On or about January 27, 2022, the Friend Conspirator told Hardware Store Owner that he could get a CDL for Applicant-19 in exchange for a reduced price on a snowblower.

q.  On January 27, 2022, the Friend Conspirator and CEDERQUIST exchanged the following texts:

| Appx Time | From | To | Message |
|---|---|---|---|
| 6:13 pm | Friend Conspirator | CEDERQUIST | [no message] [attaching the photo of the two snowblowers] |
| 6:13 pm | Friend Conspirator | CEDERQUIST | [no message] [attaching same photo, with one circled] |
| 6:14 pm | CEDERQUIST | Friend Conspirator | Nice the platinum 28 right? |
| 6:19 pm | Friend Conspirator | CEDERQUIST | 28 deluxe |
| 6:19 pm | CEDERQUIST | Friend Conspirator | No platinum |
| 6:19 pm | Friend Conspirator | CEDERQUIST | Platinum sold |
| 6:19 pm | CEDERQUIST | Friend Conspirator | Wtf |

r.   The photos the Friend Conspirator attached to the two texts he sent

CEDERQUIST at 6:13 pm were:

 

s.   On or about January 28, 2022, the Friend Conspirator bought an Ariens

Platinum Deluxe snowblower from the Hardware Store for $1,911.44, with

the Friend Conspirator paying $1,500 cash and Hardware Store Owner paying

the balance, and delivered it to CEDERQUIST's house.

t.   On February 18, 2022, as CEDERQUIST was administering a Class A skills

test to Applicant-19, he exchanged the following texts with the Friend

Conspirator:

| Appx Time | From | To | Message |
|---|---|---|---|
| 6:24 am | CEDERQUIST | Friend Conspirator | Horrible |
| 6:24 am | CEDERQUIST | Friend Conspirator | Brain dead |
| 6:25 am | Friend Conspirator | CEDERQUIST | God bless |
| 6:25 am | CEDERQUIST | Friend Conspirator | Wtf dude |
| 6:25 am | CEDERQUIST | Friend Conspirator | First time with that truck |
| 6:25 am | CEDERQUIST | Friend Conspirator | I say are you nervous he says no so I say just on a ducking delay then |
| 6:25 am | CEDERQUIST | Friend Conspirator | Looks like first time in A TRUCK |
| 6:26 am | Friend Conspirator | CEDERQUIST | He should have got another Penske truck[8] |
| 6:27 am | CEDERQUIST | Friend Conspirator | 🧑 |

[8] Applicant-19 had rented a CDL vehicle from Penske Truck Rental for a previous skills test that was cancelled.

u.  On February 18, 2022, CEDERQUIST reported in CSTIMS that Applicant-19 had passed their skills test, despite the fact that the passenger door of Applicant-19's vehicle repeatedly opened during the Basic Control Skills test, which CEDERQUIST knew was an automatic failure.

v.  CEDERQUIST did not pay for the snowblower, which, with tax, had a value of approximately $1,911.44.

### The Storage Shed

w.  On a date between January 28 and February 18, 2022, CEDERQUIST told the Friend Conspirator he wanted a storage shed to house his new snowblower.

x.  On February 18, 2022, as CEDERQUIST was testing Applicant-19, the Friend Conspirator texted CEDERQUIST pictures of two different Reeds Ferry storage sheds. CEDERQUIST replied, "Perfect. [first name of CEDERQUIST's wife] will love that." The Friend Conspirator replied, "Show her and tell me what style." CEDERQUIST replied, "I like the Gambrel one. I'll ask her." "Starting to make me forget how bad this kid [Applicant-19] is."

### The Plunge Pool

y.  CEDERQUIST told the Friend Conspirator he wanted a plunge pool.

z.  On February 18, 2022, CEDERQUIST texted the Friend Conspirator, "[L____ first name of CEDERQUIST's wife] loves the plunge pool. The Friend Conspirator replied, "Good let's do it. Go L____. Anything for her. Let me see what it goes for[,] bro will hook us up." CEDERQUIST replied, "We can make it a demo." The Friend Conspirator replied, "That's a big fucking demo.

41

I think they are good at it they don't need practice. Let's see." CEDERQUIST

replied, "Small plunge pool."

### The Conspiracy for CEDERQUIST to Have a Fence Company Install a Granite Post and Mailbox at His House in Exchange for CEDERQUIST Falsely Reporting that the Company Owner Had Passed a CDL Skills Test

87.     A small fence company in West Bridgewater, Massachusetts performed primarily

commercial and industrial, not residential, work (the "Fence Company"). The owner of the Fence

Company (the "Fence Co. Owner") was an acquaintance of CEDERQUIST. The Fence

Company did business in and affecting interstate commerce.

#### *Object and Purpose of the Conspiracy*

88.     The object of the conspiracy was for CEDERQUIST to use his official position as

the Sergeant in charge of MSP's CDL Unit to obtain property not due to him, from the Fence

Company, with the consent of the Fence Co. Owner. The purpose of the conspiracy was for

CEDERQUIST to enrich himself personally.

#### *Manner and Means of the Conspiracy*

89.     Among the manner and means by which CEDERQUIST, the Fence Co. Owner,

and other co-conspirators known and unknown to the Grand Jury carried out the conspiracy were

the following:

a.   Fence Company installing a granite post and mailbox at the end of
     CEDERQUIST's driveway without payment by CEDERQUIST;

b.   CEDERQUIST "cutting the line" to obtain an earlier-than normal CDL permit
     test appointment for Fence Co. Owner; and

42

    c.   CEDERQUIST falsely reporting in CSTIMS that Fence Co. Owner took and

passed the Class A skills test.

### *Acts in Furtherance of the Conspiracy*

90.     Between in or about August 2021 and in or about November 2021,

CEDERQUIST, the Fence Co. Owner, and co-conspirators known and unknown to the Grand

Jury committed and caused to be committed the following acts, among others, in furtherance of

the conspiracy:

    a.   On or about August 21, 2021, when Fence Co. Owner told CEDERQUIST

they were trying to get a CDL, CEDERQUIST told Fence Co. Owner he

wanted a new granite post and mailbox for the end of his driveway.

    b.   Between September 8-10, 2021, and then October 14-15, 2021, with no

messages in between, CEDERQUIST and Fence Co. Owner exchanged the

following texts:

| Date | Appx Time | From | To | Message |
|---|---|---|---|---|
| 9/08/2021 | 10:40 am | Fence Co. Owner | CEDERQUIST | Mailbox post should be in next week |
| 9/08/2021 | 10:41 am | Fence Co. Owner | CEDERQUIST | I'm going to stop by and dig safe the property probably Friday or Monday. |
| 9/08/2021 | 11:00 am | CEDERQUIST | Fence Co. Owner | Outstanding |
| 9/10/2021 | 7:37 am | CEDERQUIST | Fence Co. Owner | When are you ready for your permit test |
| 9/10/2021 | 7:47 am | Fence Co. Owner | CEDERQUIST | Next week should work fine I'm just slammed at work<br>And to top it all off some lady drove into the side of my truck |
| 9/10/2021 | 7:47 am | CEDERQUIST | Fence Co. Owner | Ok and that sucks |
| | | | | |
| 10/14/2021 | 9:27 am | CEDERQUIST | Fence Co. Owner | When are you going in to take your permit test |
| 10/14/2021 | 9:28 am | Fence Co. Owner | CEDERQUIST | Monday work ok for you ?<br>Also I'm going to do your mailbox Monday |
| 10/14/2021 | 9:28 am | CEDERQUIST | Fence Co. Owner | Nice |

| 10/14/2021 | 9:29 am | Fence Co. Owner | CEDERQUIST | I'm going to bring my foreman [name redacted] if that works okay with you |
| 10/14/2021 | 9:30 am | CEDERQUIST | Fence Co. Owner | Text me his name I'll add you guys to the schedule |
| 10/14/2021 | 9:30 am | CEDERQUIST | Fence Co. Owner | I can't wait to see that mailbox |
| 10/15/2021 | 9:02 am | CEDERQUIST | Fence Co. Owner | No mailbox yet? |
| 10/15/2021 | 9:03 am | Fence Co. Owner | CEDERQUIST | There on the way, had to finish a job from yesterday |

    c.   On October 15, 2021, after Fence Company employees installed a new granite

post and mailbox at the end of CEDERQUIST's driveway, CEDERQUIST

and Fence Co. Owner exchanged the following texts, among others:

| Appx Time | From | To | Message |
|---|---|---|---|
| 11:15 am | Fence Co. Owner | CEDERQUIST | Talk about an upgrade over what was there<br>You will be a hero tonight when the wife gets home |
| 11:36 am | CEDERQUIST | Fence Co. Owner | No shit<br>Looks awesome |
| 11:37 am | Fence Co. Owner | CEDERQUIST | I'm glad you like it you like it |

    d.   On or about Monday, October 18, 2021, Fence Co. Owner took and passed the

test for their Class A CDL permit, which CEDERQUIST had scheduled.

    e.   On November 17, 2021, CEDERQUIST reported in CSTIMS that he had

administered a skills test that day to Fence Co. Owner, who had passed all

segments, including the air brakes test, despite knowing that Fence Co. Owner

did not perform the Vehicle Inspection test or the Basic Control Skills test and

they had driven a vehicle without air brakes.

    f.   On November 17, 2021 or a date thereafter, CAMARA, who was not at Fence

Co. Owner's skills test and whom Fence Co. Owner did not know, completed

and signed the Sponsor Information section of Fence Co. Owner's Road Test

Application.

44

g.    CEDERQUIST did not pay for the granite post and mailbox, which, with parts
      and labor, had a value of approximately $750.

**Additional Falsification of CDL Skills-Test Records**

91.    On or about August 2, 2018, BUTNER falsely reported in CSTIMS that, on
August 2, 2018, he administered the Class B CDL skills test to Applicant-20, who passed. In
fact, Applicant-20 never took the skills test. BUTNER knew his report in CSTIMS was
materially false.

92.    On or about February 12, 2019, BUTNER falsely reported in CSTIMS that, on
February 8, 2019, he administered the Class A CDL skills test to Applicant-21, who passed. In
fact, Applicant-21 never took the skills test. BUTNER knew his report in CSTIMS was
materially false.

93.    On or about May 17, 2019, BUTNER falsely reported in CSTIMS that, on May
17, 2019, he administered the Class A CDL skills test to Applicant-22, who passed. In fact,
Applicant-22 never took the skills test. BUTNER knew his report in CSTIMS was materially
false.

94.    On or about December 10, 2019, BUTNER falsely reported in CSTIMS that, on
December 10, 2019, he administered the Class B CDL skills test to Applicant-23, who passed. In
fact, Applicant-23 never took the skills test. BUTNER knew his report in CSTIMS was
materially false.

95.    On or about March 25, 2021, MENDES falsely reported in CSTIMS that, on
March 25, 2021, he administered the Class A CDL skills test to Applicant-25, who passed. In

fact, Applicant-25 never took the skills test. MENDES knew his report in CSTIMS was materially false.

96.     On or about March 26, 2021, MENDES falsely reported in CSTIMS that, on March 26, 2021, he administered the Class B CDL skills test to Applicant-26, who passed. In fact, Applicant-26 never took the skills test. MENDES knew his report in CSTIMS was materially false.

97.     On or about April 30, 2021, BUTNER falsely reported in CSTIMS that, on April 30, 2021, he administered the Class A CDL skills test to Applicant-27, who passed. In fact, Applicant-27 never took the skills test. BUTNER knew his report in CSTIMS was materially false.

98.     On or about July 1, 2021, Applicant-28 met CEDERQUIST at the RMV service center in Brockton. Applicant-28 came in a work truck, which was not a commercial vehicle, and did not have a sponsor. Applicant-28 performed no part of the skills test. CEDERQUIST entered false information on Applicant-28's Road Test Application and Score Sheet. Specifically: (a) using the same tractor and trailer information he had used on the fabricated Score Sheet for Applicant-18, CEDERQUIST wrote that Applicant-28 had taken their test in a Class A vehicle with air brakes; (b) he wrote that Applicant-28's sponsor was the Friend Conspirator and he forged the Friend Conspirator's signature; and (c) he reported passing scores for all three test segments as well as the air brakes test. On July 1, 2021, CEDERQUIST entered false information in CSTIMS, reporting that he had administered the Class A skills test to Applicant-28 in Stoughton on July 1, 2021, that Applicant-28 had driven a Class A vehicle with air brakes

and manual transmission, and that Applicant-28 had received passing scores on all three test segments, including the air brakes test. CEDERQUIST knew his entries were materially false.

99.     On or about January 13, 2022, CEDERQUIST falsely reported on the Road Test Application and Score Sheet of Applicant-29, and in CSTIMS, that, on January 13, 2022, he had administered the Basic Control Skills and Road Test segments of the Class A CDL skills test to Applicant-29, who had passed both segments. In fact, Applicant-29 performed no maneuvers. CEDERQUIST knew his reports were materially false.

### *Perjury by CAMARA*

100.     Beginning in or about December 2022 and continuing to in or about January 2024, a federal grand jury sitting in Boston, Massachusetts conducted an investigation into possible violations of federal laws, including 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 1951 (extortion and conspiracy to commit extortion); 18 U.S.C. §§ 1341 and 1346 (honest services mail fraud); 18 U.S.C. § 1519 (falsifying records to influence the proper administration of a matter within the jurisdiction of a federal agency); and 18 U.S.C. § 1001 (making false statements within the jurisdiction of the federal government).

101.     The grand jury investigated, among other things, whether the Class A skills tests administered by CEDERQUIST to Trooper A, Trooper B, and Trooper C satisfied FMCSA-established requirements, as CEDERQUIST represented on the troopers' Road Test Applications and Score Sheets, and in CSTIMS. Those requirements included, among other things, (a) that an

applicant have a sponsor present; (b) that the applicant drive a Class A vehicle; and (c) that the examiner ride with the applicant during the Road Test.

102.     On May 4, 2023, CAMARA testified that he rode with Trooper A, Trooper B, and Trooper C in October 2021 in a cab without a trailer – which meant the vehicle did not qualify as a Class A vehicle. CAMARA testified that he did so at CEDERQUIST's request, and only to teach the troopers how to shift. CAMARA testified that he did not sponsor Trooper A, Trooper B, or Trooper C.

103.     The "Sponsor Information" section of the Road Test Applications of Trooper A, Trooper B, and Trooper C identified CAMARA as the sponsor. The entries were as follows:

| Trooper A | Sponsor License Number: S55043088 | Expiration (MM/DD/YYYY): 04/08/2023 | Class: AM | State: MA |
| | Sponsor Printed Name: Scott Camara | Sponsor Signature: Sctt Camara | Date (MM/DD/YYYY): 10/05/2021 | |
| Trooper B | Sponsor License Number: S55043088 | Expiration (MM/DD/YYYY): 04/08/2023 | Class: AM | State: MA |
| | Sponsor Printed Name: Scott Camara | Sponsor Signature: Sctt Camara | Date (MM/DD/YYYY): 10/05/2021 | |
| Trooper C | Sponsor License Number: S55043088 | Expiration (MM/DD/YYYY): 04/08/2023 | Class: AM | State: MA |
| | Sponsor Printed Name: Scott Camara | Sponsor Signature: Sctt Camara | Date (MM/DD/YYYY): 10/06/2021 | |

104.     CAMARA admitted that all of the handwriting in the Sponsor Information section of the three applications was or looked like his, but falsely testified not to know how it got there.

105.     The "Vehicle Information" section in Trooper A's, Trooper B's, and Trooper C's Road Test Applications falsely represented that a trailer was attached to the cab driven by the troopers. The entries for the cab and trailer were as follows:

48

| | Vehicle Make/Year | Tractor Registration Number/GVWR | State | Trailer Make/Year | Trailer Registration Number/GVWR | State |
|---|---|---|---|---|---|---|
| Trooper A | 2014 / FRHT | 22894 L / 32K | IL | GREA / 08 | AJ 72389 / 64K | CT |
| Trooper B | FRHT / 2014 | 22894L / 32K | IL | GREA / 08 | AJ 72389 / 64K | CT |
| Trooper C | FRHT / 14 | 22894 L / 32K | IL | GREA / 04 | AJ 72389 / 64K | CT |

106.    CAMARA admitted that the cab and trailer identified on the applications were both owned by his employer, but falsely testified before the grand jury that he did not write any of the above information identifying the cab and trailer.

107.    CAMARA's testimony before the grand jury included the following false material declarations:

Q.    Is there any other writing on this [Road Test Application of Trooper B other than the Sponsor Information] that you believe is yours?

A.    No, Ma'am.

* * *

Q.    And the [page of Trooper C's Road Test Application], is the … sponsor information or the information and the signature, is that all your handwriting?

A:    The signature's different.

Q:    Do you believe it's your signature?

A:    It could be, but I never filled that out.

* * *

Q:    Then on the [page of Trooper C's application containing the Vehicle Information section], does your handwriting appear anywhere here?

A:    No, Ma'am.

* * *

Q:    Is [the cab and trailer information on the Road Test Applications of Trooper B and Trooper C] in your handwriting?

A:    No, Ma'am.

* * *

Q:    Do you have any idea how your signature and license information came to be on the sponsor information parts of the applications for [Trooper C and Trooper B],

and the … cab and the trailer information belonged to vehicle[s] that are owned by [CAMARA's employer] and yet you did not sponsor these people?

A:   Yes, Ma'am.

Q:   Do you know how that happened?

A:   I – no, ma'am, I do not.

*   *   *

Q:   And do you have any explanation for how your signature and name, and sponsor information appears on road applications for [Trooper A, Trooper B, and Trooper C] when you did not sponsor them?

A:   I do not know ma'am.

Q:   Do you have any explanation for how a [name of CAMARA's employer] cab and trailer, that the information for those appear on those three applications [of Trooper A, Trooper B, and Trooper C] when in fact … you did not test those troopers using the cab and trailer?

A:   I do not know ma'am.

<u>COUNT ONE</u>
Conspiracy to Falsify Records
(18 U.S.C. § 371)

The Grand Jury charges:

108.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

109.    From at least as early as May 15, 2019, through on or about January 5, 2023, in the District of Massachusetts and elsewhere, the defendants,

        (1)  GARY CEDERQUIST,
        (2)  CALVIN BUTNER,
        (3)  PERRY MENDES, and
        (4)  JOEL ROGERS,

conspired with each other and with others known and unknown to the Grand Jury to commit offenses against the United States, to wit, violations of Title 18, United States Code, Section 1519, by knowingly falsifying and making a false entry in any record and document with the intent to impede, obstruct, and influence the proper administration of any matters within the jurisdiction of any department and agency of the United States, to wit, the United States Department of Transportation, and in relation to and contemplation of any such matter.

All in violation of Title 18, United States Code, Section 371.

<u>COUNT TWO</u>
Conspiracy to Falsify Records
(18 U.S.C. § 371)

The Grand Jury further charges:

110.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

111.     From at least as early as October 5, 2021, through on or about October 6, 2021, in the District of Massachusetts and elsewhere, the defendants,

        (1)   GARY CEDERQUIST and
        (5)   SCOTT CAMARA,

conspired with others known and unknown to the Grand Jury to commit offenses against the United States, to wit, violations of Title 18, United States Code, Section 1519, by knowingly falsifying and making a false entry in any record and document with the intent to impede, obstruct, and influence the proper administration of any matters within the jurisdiction of any department and agency of the United States, to wit, the United States Department of Transportation, and in relation to and contemplation of any such matter.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
### Conspiracy to Falsify Records
### (18 U.S.C. § 371)

The Grand Jury further charges:

112.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

113.    From a date no later than January 31, 2022, through on or about February 9, 2022, in the District of Massachusetts and elsewhere, the defendant,

### (1) GARY CEDERQUIST,

conspired with the Trooper Conspirator and others known and unknown to the Grand Jury to commit offenses against the United States, to wit, violations of Title 18, United States Code, Section 1519, by knowingly falsifying and making a false entry in any record and document with the intent to impede, obstruct, and influence the proper administration of any matters within the jurisdiction of any department and agency of the United States, to wit, the United States Department of Transportation, and in relation to and contemplation of any such matter.

All in violation of Title 18, United States Code, Section 371.

## COUNT FOUR
## Conspiracy to Commit Extortion
## (18 U.S.C. § 1951)

The Grand Jury further charges:

114.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this

Indictment.

115.    From at least as early as in or about October 2018 through in or about November

2021, in the District of Massachusetts and elsewhere, the defendants,

(1)  GARY CEDERQUIST,
(2)  CALVIN BUTNER,
(3)  PERRY MENDES, and
(6)  ERIC MATHISON,

conspired with others known and unknown to the Grand Jury to obstruct, delay and affect, and

attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of any

article and commodity in commerce, by extortion, as that term is defined in Title 18, United States

Code, section 1951; that is, by obtaining a stream of benefits, to wit, Water Company inventory,

not due to GARY CEDERQUIST, with assistance from CALVIN BUTNER and PERRY

MENDES, from ERIC MATHISON, with ERIC MATHISON's consent, under color of official

right.

All in violation of Title 18, United States Code, Section 1951.

<u>COUNT FIVE</u>
Conspiracy to Commit Extortion
(18 U.S.C. § 1951)

The Grand Jury further charges:

116.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

117.     From at least as early as in or about March 2021 through in or about February 2022, in the District of Massachusetts and elsewhere, the defendant,

(1)   GARY CEDERQUIST,

conspired with the Friend Conspirator and others known and unknown to the Grand Jury to obstruct, delay and affect, and attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by obtaining a stream of benefits, to wit, landscaping work, renovation of a driveway, a snowblower, a storage shed, and a plunge pool, not due to the defendant, GARY CEDERQUIST, from the Friend Conspirator, with the Friend Conspirator's consent, under color of official right.

All in violation of Title 18, United States Code, Section 1951.

COUNT SIX
Conspiracy to Commit Extortion
(18 U.S.C. § 1951)

The Grand Jury further charges:

118.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

119.    From at least as early as in or about August 2021 through in or about November 2021, in the District of Massachusetts and elsewhere, the defendant,

(1) GARY CEDERQUIST,

conspired with the Fence Co. Owner and others known and unknown to the Grand Jury to obstruct, delay and affect, and attempt to obstruct, delay, and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by obtaining property, to wit, a granite mailbox and post, not due to the defendant, GARY CEDERQUIST, from the Fence Co. Owner, with the consent of the Fence Co. Owner, under color of official right.

All in violation of Title 18, United States Code, Section 1951.

## COUNTS SEVEN - EIGHT
### Extortion
### (18 U.S.C. § 1951)

The Grand Jury further charges:

120.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

121.     On or about the dates below, in the District of Massachusetts and elsewhere, the defendant,

### (1)   GARY CEDERQUIST,

did obstruct, delay and affect, and attempt to obstruct delay and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by obtaining property not due to the defendant, GARY CEDERQUIST, from the Friend Conspirator, with the consent of the Friend Conspirator:

| Count | Date | Property |
|-------|------|----------|
| 7 | May 18-22, 2021 | Driveway valued at approximately $10,000 |
| 8 | Jan. 28, 2022 | Snowblower valued at approximately $1,911.44 |

All in violation of Title 18, United States Code, Section 1951.

<u>COUNT NINE</u>
Extortion
(18 U.S.C. § 1951)

The Grand Jury further charges:

122.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

123.    On or about October 15, 2021, in the District of Massachusetts and elsewhere, the defendant,

(1)   GARY CEDERQUIST,

did obstruct, delay and affect, and attempt to obstruct delay and affect, in any way and degree, commerce and the movement of any article and commodity in commerce, by extortion, as that term is defined in Title 18, United States Code, section 1951; that is, by obtaining a granite mailbox and post valued at approximately $750 not due to the defendant, GARY CEDERQUIST, from the Fence Co. Owner, with the consent of the Fence Co. Owner.

All in violation of Title 18, United States Code, Section 1951.

COUNTS TEN - FIFTEEN
Honest Services Mail Fraud
(18 U.S.C. §§ 1341, 1346)

The Grand Jury further charges:

124.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

125.     On or about the dates below, in the District of Massachusetts and elsewhere, the defendant,

(1) GARY CEDERQUIST,

having devised and intending to devise a scheme and artifice to defraud by means of materially false and fraudulent pretenses, representations, and promises, and to defraud the Commonwealth of Massachusetts of its right to the honest and faithful services of its employee, GARY CEDERQUIST, did, for the purpose of executing and attempting to execute the scheme, knowingly cause to be delivered by mail and by any private and commercial interstate carrier according to the direction thereon, the following:

| Count | Date | Description |
|---|---|---|
| 10 | 2/8/2019 | Class B CDL mailed to Water Co. Employee-1 |
| 11 | 8/10/2020 | Class B CDL mailed to Water Co. Employee-2 |
| 12 | 3/9/2020 | Class B CDL mailed to Truck Driver |
| 13 | 5/25/2021 | Class A CDL mailed to Applicant-18 |
| 14 | 11/23/2021 | Class A CDL mailed to Fence Co. Owner |
| 15 | 2/23/2022 | Class A CDL mailed to Applicant-19 |

All in violation of Title 18, United States Code, Sections 1341 and 1346.

COUNTS SIXTEEN – THIRTY-FOUR
Falsification of Records
(18 U.S.C. § 1519)

The Grand Jury further charges:

126.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of

this Indictment.

127.    On or about the dates below, in the District of Massachusetts and elsewhere, the

defendant,

(1)   GARY CEDERQUIST,

did knowingly conceal, cover up, falsify, and make a false entry in any record and document

with the intent to impeded, obstruct, and influence the proper administration of any matter within

the jurisdiction of any department and agency of the United States, to wit, the United States

Department of Transportation, and in relation to and contemplation of any such matter:

| Count | Date | Record Falsification |
|-------|------|----------------------|
| 16 | 2/2/2019 | False entry in CSTIMS that MENDES had administered to Water Co. Employee-1, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 17 | 2/25/2020 | False entry in CSTIMS that CEDERQUIST had administered to Water Co. Employee-2, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 18 | 2/25/2020 | False entry in CSTIMS that CEDERQUIST had administered to Truck Driver, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 19 | 5/20/2021 | Fabricated score sheet for Applicant-18 representing that said applicant had taken and passed a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

| 20 | 5/20/2021 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-18, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 21 | 7/1/2021 | CEDERQUIST falsely reported on the Road Test Application and Score Sheet of Applicant-28 that he had administered, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 22 | 7/1/2021 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-28, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 23 | 10/5/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper A, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 24 | 10/5/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper B, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 25 | 10/6/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper C, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 26 | 10/6/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper D, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 27 | 11/17/2021 | False entry in CSTIMS that CEDERQUIST had administered to Fence Co. Owner, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 28 | 1/13/2022 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-29, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 29 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to ROGERS, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

| 30 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Trooper E, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 31 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Civilian MSP Employee-1, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 32 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Civilian MSP Employee-2, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 33 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Civilian MSP Employee-3, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 34 | 2/18/2022 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-19, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

All in violation of Title 18, United States Code, Section 1519.

COUNTS THIRTY-FIVE – FORTY
Falsification of Records
(18 U.S.C. § 1519)

The Grand Jury further charges:

128.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of

this Indictment.

129.    On or about the dates below, in the District of Massachusetts and elsewhere, the

defendant,

(2) CALVIN BUTNER,

did knowingly conceal, cover up, falsify, and make a false entry in any record and document

with the intent to impede, obstruct, and influence the proper administration of any matter within

the jurisdiction of any department and agency of the United States, to wit, the United States

Department of Transportation, and in relation to and contemplation of any such matter:

| Count | Date | Record Falsification |
|-------|------|----------------------|
| 35 | 8/2/2018 | False entry in CSTIMS that BUTNER had administered to Applicant-20, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 36 | 2/12/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-21, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 37 | 5/17/2019 | BUTNER falsely reported on the Road Test Application and Score Sheet of Applicant-22 that he had administered, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 38 | 5/17/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-22, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

| 39 | 12/10/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-23, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
|---|---|---|
| 40 | 4/30/2021 | False entry in CSTIMS that BUTNER had administered to Applicant-27, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |

All in violation of Title 18, United States Code, Section 1519.

COUNTS FORTY-ONE – FORTY-THREE
Falsification of Records
(18 U.S.C. § 1519)

The Grand Jury further charges:

130.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of

this Indictment.

131.    On or about the dates below, in the District of Massachusetts and elsewhere, the

defendant,

(3) PERRY MENDES,

did knowingly conceal, cover up, falsify, and make a false entry in any record and document

with the intent to impede, obstruct, and influence the proper administration of any matter within

the jurisdiction of any department and agency of the United States, to wit, the United States

Department of Transportation, and in relation to and contemplation of any such matter:

| Count | Date | Record Falsification |
|---|---|---|
| 41 | 1/31/2019 | False entry on the Score Sheet of Water Co. Employee-1 that MENDES had administered, and said applicant had passed, the Basic Control Skills and Road Test segments of the skills test mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 42 | 3/25/2021 | False entry in CSTIMS that MENDES had administered to Applicant-25, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 43 | 3/26/2021 | False entry in CSTIMS that MENDES had administered to Applicant-26, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |

All in violation of Title 18, United States Code, Section 1519.

COUNTS FORTY-FOUR – FORTY-SIX
Falsification of Records; Aiding and Abetting
(18 U.S.C. § 1519; 18 U.S.C. § 2)

The Grand Jury further charges:

132.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

133.    On or about the dates below, in the District of Massachusetts and elsewhere, the defendants,

(1) GARY CEDERQUIST and
(2) CALVIN BUTNER,

did knowingly conceal, cover up, falsify, and make a false entry in any record and document with the intent to impede, obstruct, and influence the proper administration of any matter within the jurisdiction of any department and agency of the United States, to wit, the United States Department of Transportation, and in relation to and contemplation of any such matter:

| Count | Date | Record Falsification |
|---|---|---|
| 44 | 5/15/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-1, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 45 | 1/3/2022 | False entry in CSTIMS that BUTNER had administered to Applicant-13, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 46 | 2/7/2022 | False entry in CSTIMS that BUTNER had administered to Applicant-14, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |

All in violation of Title 18, United States Code, Sections 1519 and 2.

COUNTS FORTY-SEVEN – SIXTY-THREE
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

134.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

135.    On or about the dates below, in the District of Massachusetts and elsewhere, the defendant,

(1) GARY CEDERQUIST,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, the United States Department of Transportation, as follows:

| Count | Date | False Statement |
|---|---|---|
| 47 | 2/2/2019 | False entry in CSTIMS that MENDES had administered to Water Co. Employee-1, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 48 | 2/25/2020 | False entry in CSTIMS that CEDERQUIST had administered to Water Co. Employee-2, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 49 | 2/25/2020 | False entry in CSTIMS that CEDERQUIST had administered to Truck Driver, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 50 | 5/21/2021 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-18, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 51 | 7/1/2021 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-28, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

| 52 | 10/5/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper A, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
|----|-----------|---|
| 53 | 10/5/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper B, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 54 | 10/6/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper C, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 55 | 10/6/2021 | False entry in CSTIMS that CEDERQUIST had administered to Trooper D, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 56 | 11/17/2021 | False entry in CSTIMS that CEDERQUIST had administered to Fence Co. Owner, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 57 | 1/13/2022 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-29, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 58 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to ROGERS, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 59 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Trooper E, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 60 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Civilian MSP Employee-1, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 61 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Civilian MSP Employee-2, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 62 | 2/8/2022 | False entry in CSTIMS that CEDERQUIST had administered to Civilian MSP Employee-3, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

| 63 | 2/18/2022 | False entry in CSTIMS that CEDERQUIST had administered to Applicant-19, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNTS SIXTY-FOUR – SIXTY-EIGHT
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

136.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of

this Indictment.

137.    On or about the dates below, in the District of Massachusetts and elsewhere, the

defendant,

(2) CALVIN BUTNER,

knowingly and willfully made a materially false, fictitious and fraudulent statement and

representation in a matter within the jurisdiction of the executive branch of the Government of

the United States, to wit, the United States Department of Transportation, as follows:

| Count | Date | False Statement |
|---|---|---|
| 64 | 8/2/2018 | False entry in CSTIMS that BUTNER had administered to Applicant-20, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 65 | 2/12/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-21, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 66 | 5/17/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-22, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 67 | 12/10/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-23, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 68 | 4/30/2021 | False entry in CSTIMS that BUTNER had administered to Applicant-27, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |

All in violation of Title 18, United States Code, Section 1001(a)(2).

<u>COUNTS SIXTY-NINE – SEVENTY</u>
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

138.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

139.    On or about the dated below, in the District of Massachusetts and elsewhere, the defendant,

(3) PERRY MENDES,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit, the United States Department of Transportation, as follows:

| Count | Date | False Statement |
|---|---|---|
| 69 | 3/25/2021 | False entry in CSTIMS that MENDES had administered to Applicant-25, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 70 | 3/26/2021 | False entry in CSTIMS that MENDES had administered to Applicant-26, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |

All in violation of Title 18, United States Code, Section 1001(a)(2).

COUNTS SEVENTY-ONE – SEVENTY-THREE
False Statements; Aiding and Abetting
(18 U.S.C. § 1001(a)(2); 18 U.S.C. § 2)

The Grand Jury further charges:

140.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of

this Indictment.

141.     On or about the dates below, in the District of Massachusetts and elsewhere, the

defendants,

(1) GARY CEDERQUIST and
(2) CALVIN BUTNER,

knowingly and willfully made a materially false, fictitious and fraudulent statement and

representation in a matter within the jurisdiction of the executive branch of the Government of

the United States, to wit, the United States Department of Transportation, as follows:

| Count | Date | False Statement |
|---|---|---|
| 71 | 5/15/2019 | False entry in CSTIMS that BUTNER had administered to Applicant-1, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |
| 72 | 1/3/2022 | False entry in CSTIMS that BUTNER had administered to Applicant-13, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class A CDL |
| 73 | 2/7/2022 | False entry in CSTIMS that BUTNER had administered to Applicant-14, and said applicant had passed, a skills test meeting all requirements mandated by the Federal Motor Carrier Safety Administration, U.S. Department of Transportation, for a Class B CDL |

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT SEVENTY-FOUR
Perjury
(18 U.S.C. § 1623)

The Grand Jury further charges:

142.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 107 of this Indictment.

143.    On or about May 4, 2023, in the District of Massachusetts, the defendant,

(5) SCOTT CAMARA,

while under oath and testifying in a proceeding before a grand jury of the United States knowingly made false material declarations in response to certain questions as set forth in paragraph 107 of this Indictment.

All in violation of Title 18, United States Code, Section 1623.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1.      Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1951, 1341, and 1346 set forth in Counts Four - Fifteen, the defendants,

(1) GARY CEDERQUIST,
(2) CALVIN BUTNER,
(3) PERRY MENDES, and
(6) ERIC MATHISON,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

CHRISTINE WICHERS
ADAM W. DEITCH
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: JANUARY 25, 2024
Returned into the District Court by the Grand Jurors and filed.

01/25/2024

DEPUTY CLERK

76